```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
        -against-                        :    MEMORANDUM AND ORDER
                                         :    13-CR-345-3 (WFK)
AUGUSTIN TANCO,                          :
                                         :
                        Defendant.       :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 2, 2015, Defendant Augustin Tanco ("Defendant") pled guilty to Hobbs Act Robbery Conspiracy. ECF No. 69 ("Guilty Plea"). The Court now provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to forty (40) months of incarceration, to be followed by three (3) years of supervised release, and a $100.00 mandatory special assessment.

## BACKGROUND

On February 27, 2014, Defendant was charged by a Superseding Indictment with Hobbs Act Robbery Conspiracy under 18 U.S.C. §§ 1951(a) and 3551 *et seq.* ("Count One"); Heroin and Cocaine Distribution Conspiracy under 21 U.S.C. §§ 846, 841(b)(1)(A)(i), and 841(b)(1)(A)(ii)(II) ("Count Two"); Attempted Possession of Cocaine and Heroin under 21 U.S.C. §§ 846, 841(b)(1)(A)(i), and 841(b)(1)(A)(ii)(II) ("Count Three"); and Unlawful Use of a Firearm under 18 U.S.C. §§ 924(c)(1)(A)(i), 2, and 3551 *et seq.* ("Count Four"). ECF No. 30 ("Sup. Indictment") at 1-3. On April 2, 2015, Defendant pled guilty to Count One of the Sup. Indictment. *See* Guilty Plea at 1.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. When the District Court chooses to impose a sentence outside of the Sentencing Guidelines range, the Court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The Court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under [Section] 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). 18 U.S.C. § 3553(a) provides a list of reasons for the Court to consider in choosing what sentence to impose on a criminal defendant.

The Court addresses each of the 18 U.S.C. § 3553(a) factors in turn.

### II. Analysis

#### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first 18 U.S.C. § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the [D]efendant." 18 U.S.C. § 3553(a)(1). Based on these factors, the Court's sentence is justified.

### a. History and Characteristics of Defendant

Defendant was born on September 10, 1974, in Brooklyn, New York. ECF No. 95 ("PSR") ¶¶ 47-8. He attended school through the eleventh grade. *Id.* ¶ 61. He has maintained a good relationship with his family, but his father's addiction to heroin and frequent incarceration has caused strain in that relationship. *Id.* ¶ 46. Defendant has four children, the final two a product of his current fifteen-year relationship with Yahaira Castillo. *Id.* ¶¶ 50-2. Ms. Castillo owns a bodega grocery store, at which Defendant is employed and earns $1516.67 per month. *Id.* Defendant has no history of drug or alcohol abuse. *Id.* ¶ 59.

Defendant's criminal history spans two decades. In 1992, at age seventeen, Defendant was sentenced in New York State Supreme Court to five years of probation for selling crack cocaine to an undercover police officer. *Id.* ¶ 31. At age twenty, Defendant was sentenced to four months of intermittent custody and five years of probation for attempted robbery; he was also sentenced to an additional six months of custody because he had violated his earlier probation. *Id.* ¶¶ 31-2. At age twenty-two, Defendant punched his then ex-girlfriend—the mother of his oldest child—and was sentenced to one year of conditional discharge for harassment in the second degree. *Id.* ¶ 34. At age twenty-three, Defendant was sentenced to one year of conditional discharge and a $300.00 fine for producing a forged insurance card during a routine traffic stop. *Id.* ¶ 35.

On July 1, 1999, Defendant was sentenced in the United States District Court for the Eastern District of Virginia to sixty months of custody, four years of supervised release, and a $100.00 special assessment for conspiracy to distribute heroin. *Id.* ¶ 36. According to the presentence report in that case, Defendant and others distributed 139.4 grams of heroin in Richmond, Virginia between 1998 and August of 1999. *Id.* Defendant's sentence was later

3

reduced to thirty months of custody. *Id.* While on supervised release, the defendant was arrested for driving without a license and for assault with intent to cause physical injury. *Id.* Nevertheless, he was not subject to violation of supervised release sanctions. *Id.*

On October 28, 2005, two months after the expiration of his supervised release in the EDVA case, Defendant was sentenced in Queens Criminal Court to thirty days of custody and three years of probation for possessing large amounts of heroin, glassine baggies, and rubber bands for bundling heroin. *Id.* ¶ 37. On November 18, 2007, at age thirty-three, Defendant was sentenced to ninety days custody for criminal possession of heroin; he was also resentenced to sixty days of custody for violating his Queens Criminal Court probation. *Id.* ¶¶ 37-8.

Defendant was arrested twice without conviction: once in 2002 for assault with intent to cause physical injury, and once in 2003 for aggravated unlicensed operation of a motor vehicle. *Id.* ¶¶ 43-4.

Defendant also has a pending charge in New York State Supreme Court. Court records allege that between August 10, 2011, and May 8, 2012, Defendant and others, including the defendant's father, conspired to distribute more than one half of an ounce of a heroin through a series of transactions with an undercover police officer. *Id.* ¶ 42. During the execution of a search warrant at the address of record, officers recovered $50,000.00 cash. *Id.* At another address, officers also recovered a large quantity of heroin and cocaine, $8,000.00 cash, drug paraphernalia, and a loaded firearm. *Id.* Defendant was released on $20,000.00 cash bail following his initial appearance until October 12, 2012. *Id.*

b. **Nature and Circumstances of the Offense**

In this case, Defendant was involved in a conspiracy to distribute heroin and commit robbery with co-conspirators Miguel Figueroa and Joshua Ortiz Rolon. *Id.* ¶ 8. Between

4

January and May of 2013, Figueroa engaged in price negotiations with a Drug Enforcement Agency ("DEA") informant for the purchase of one to ten kilograms of heroin and ten kilograms of cocaine. *Id.* ¶¶ 3-8. On May 9, 2013, Defendant drove to a restaurant in Valley Stream, New York with Figueroa and Ortiz Rolon, where the three conspirators intended to rob the DEA informant of his purported narcotics. *Id.* ¶ 9. Defendant and his co-conspirators were arrested before they could commit the robbery, and a loaded .380 caliber Lorcin handgun was recovered from Ortiz Rolon. *Id.* In a post-arrest statement, Defendant told the DEA that he was present at the restaurant to provide protection to Figueroa in connection with the drug transaction, and that he knew Figueroa intended to rob the DEA informant. *Id.* ¶ 10.

In April and May of 2015, following Defendant's guilty plea, Defendant met with the government on numerous occasions and substantially assisted the government in preparing for trial against Figueroa. ECF No. 130 ("Gov't Mem.") at 3. Though Figueroa eventually pled guilty, Defendant was prepared to testify had Figueroa proceeded to trial. *Id.* Defendant provided the Government with details concerning "Figueroa's history of drug trafficking, the locations from which Figueroa sold drugs, various conflicts Figueroa had with rival drug dealers, admissions Figueroa made about the drug deal with the [confidential informant], Figueroa's plan to rob the [confidential informant], Figueroa's plan to evade law enforcement on the day of the planned robbery, and incriminating statements Figueroa made following his arrest on the instant charges." *Id.* Defendant also consented to a search of his cellular telephone, which corroborated many of his statements to the government. *Id.* In consideration of this substantial assistance, the Government filed a letter requesting that the Court depart downward from Defendant's Guidelines range pursuant to Guidelines Section 5K1.1. *Id.*

5

### 2. The Need for the Sentence Imposed

The second 18 U.S.C. § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The Court will address each subsection in turn.

#### a. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment

The Court finds that a significant sentence is necessary to accomplish the purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Defendant's crime is serious: while he was not the ringleader of the conspiracy, he significantly furthered it by offering his "protection" to Figueroa and supporting the attempted robbery. He did this fully aware that his co-conspirator, Ortiz Rolon, possessed a loaded handgun that could be used for violent purposes if the situation escalated. Without the support of Defendant and Ortiz Rolon, Figueroa may not have been comfortable with the idea of a robbery, and innocent lives would not have been placed in danger. Defendant's conduct thus directly enabled the planned robbery, and his sentence will satisfy the goal of the Hobbs Act to "use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence." *Stirone v. United States*, 361 U.S. 212, 215 (1960).

### b. Affording Adequate Deterrence to Criminal Conduct

"Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." *Davis*, 2010 WL 1221709 at *2. The Court finds that a significant sentence of incarceration is also necessary to afford adequate deterrence, both specific and general, to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B).

Regarding specific deterrence, Defendant is a career criminal who has engaged in criminal conduct almost every year of his adult life in which he has not been incarcerated. Defendant's persistent criminality after multiple convictions indicates that he is in need of lengthy incapacitation to deter him from continuing this trend. *See United States v. Park*, 758 F.3d 193, 201 (2d Cir. 2014) (noting particular need for incapacitation and specific deterrence given defendant's continued criminal activity after prior convictions). Regarding general deterrence, the Court finds that a significant sentence will discourage potential supporters of would-be criminals from aiding and abetting crimes of violence, reducing the likelihood that such crimes actually occur.

### c. Protecting the Public from Further Crimes of the Defendant

As noted above, Defendant is a career criminal whose offenses have escalated from the sale of small quantities of illegal narcotics to violent crime, attempted robbery, and the distribution of much larger quantities of drugs. The only way to protect the public from Defendant's continued pursuit of criminal activity is to incarcerate defendant for a significant period of time.

7

d. **Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Defendant does not require additional educational or vocational training, medical care, or other correctional treatment. Accordingly, this factor is irrelevant.

3. **The Kinds of Sentences Available**

The third 18 U.S.C. § 3553(a) factor requires the Court to discuss "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Hobbs Act Robbery Conspiracy under 18 U.S.C. § 1951(a). *See* Guilty Plea at 1. This count carries a maximum imprisonment term of twenty years, 18 U.S.C. § 1951(a), and a maximum supervised release period of three years, 18 U.S.C. § 3583(b)(2). In addition, because this Count is a Class C Felony, Defendant is eligible for not less than one nor more than five years of probation, with one or more of the following conditions: a fine, restitution, or community service. 18 U.S.C. §§ 3561(c)(1), 3563(a)(2). Defendant faces a maximum fine of $250,000.00, 18 U.S.C. § 3571(b), and a mandatory special assessment of $100.00, 18 U.S.C. § 3013. Restitution is not applicable in this case. 18 U.S.C. § 3663. Accordingly, the Court's sentence falls within the kinds of sentences available to Defendant.

4. **The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses**

The fourth 18 U.S.C. § 3553(a) factor requires the Court to detail "the kinds of sentence and the sentencing range established for[] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guideline 2X1.1(a) provides that the base offense level for conspiracy be derived from the guideline for the substantive offense, plus any adjustments from such guideline for any

8

intended offense conduct that can be established with reasonable certainty. U.S. Sentencing Guidelines Manual § 2X1.1(a) (U.S. Sentencing Comm'n 2015) ("U.S.S.G."). Accordingly, Defendant has a base offense level of twenty pursuant to Guideline 2B3.1, which governs robbery convictions. *Id.* § 2B3.1. Five offense levels are added because Defendant's co-conspirator, Ortiz Rolon, possessed a firearm. *Id.* § 2B3.1(b)(2)(C). An additional one-level enhancement is warranted because the taking of a controlled substance was the object of the offense. *Id.* § 2B3.1(b)(6). Because Defendant clearly demonstrated acceptance of responsibility for the offense and pled guilty in a timely manner, a decrease of three offense levels is permitted by the guidelines. *Id.* §§ 3E1.1(a), 3E1.1(b). The Government also moved this Court for a one-level "global" reduction pursuant to U.S.S.G. 5K2.0(a)(2). Gov't Mem. at 3.

Taking all adjustments into account, Defendant's offense level is twenty-two. *Id.* With a criminal history category of IV, Defendant's guidelines sentencing range is sixty-three to seventy-eight months. *See* U.S. Sentencing Guidelines Manual Sentencing Table (U.S. Sentencing Comm'n 2015). Defendant is eligible for a supervised release term of one to three years. *Id.* § 5D1.2(a)(2). Defendant is ineligible for probation because the applicable guidelines range is in Zone D of the Sentencing Table. *Id.* § 5B1.1, comment (n.2). The guidelines also suggest a fine in the range of $15,000.00 to $150,000.00. *Id.* § 5E1.2(c)(3).

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth 18 U.S.C. § 3553(a) factor requires the Court to evaluate "any pertinent policy statement [] issued by the Sentencing Commission[.]" 18 U.S.C. § 3553(a)(5). There are no applicable policy statements in this case, and this factor is not relevant.

### 6. The Need to Avoid Unwarranted Sentence Disparities

The sixth 18 U.S.C. § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant pleaded guilty to Hobbs Act Robbery Conspiracy, which carries a maximum imprisonment term of twenty years of incarceration. *See* Guilty Plea at 1; 18 U.S.C. § 1951(a). Accordingly, a sentence of up to twenty years imprisonment is not beyond the pale for Defendant's crime, and avoids disparities with other federal sentences which recognize the severity of such a crime.

In addition, "[t]he New York state statute, while not directly applicable, provides a useful indication of how this crime would be treated" under state law. *United States v. Ferranti*, 928 F. Supp. 206, 214 (E.D.N.Y. 1996) (Weinstein, J.). The New York state analog to Defendant's crime is Conspiracy in the Fourth Degree, which carries a sentence of one to four years of imprisonment. *See* New York Penal Law §§ 105.10, 70.00(2)(e). Because Defendant would be categorized as a "persistent felony offender" under New York Penal Law § 70.10 due to his extensive criminal history, however, it would be within a court's discretion to subject him to an alternative sentence of 15 years to life imprisonment. *See id.* §§ 70.10(2), 70.00(3)(a)(i). A substantial prison sentence would therefore not create a disparity with New York State sentences for similar defendants.

### 7. The Need to Provide Restitution

Lastly, the seventh 18 U.S.C. § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in Defendant's case. *See* 18 U.S.C. § 3663. Accordingly, this factor is not relevant.

10

## CONCLUSION

A sentence of forty months of incarceration, to be followed by three years of supervised release, and the $100.00 mandatory assessment fee, is sufficient but no greater than necessary to accomplish the purposes of 18 U.S.C. § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, with the exception of Defendant's guidelines sentencing range, and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 20, 2016
      Brooklyn, New York